Argued May 16, reversed August 1, reconsideration denied September 12, 1978, petition for review allowed February 13, 1979

WELLER et al, *Respondents,*

*v.*

UNION CARBIDE CORPORATION, *Appellant.*

(No. A 7708-12042, WCB Case No. 76-2353,
Claim No. 87 CJM 42588, CA 10478)

582 P2d 8

Noreen K. Saltveit, Portland, argued the cause for appellant. With her on the brief was Merten & Saltveit, Portland.

Keith Tichenor, Portland, argued the cause for respondent Harold J. Weller. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Ridgway K. Foley, Jr., Portland, argued the cause for respondent Aetna Life & Casualty Company. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe and Roger A. Luedtke, Portland.

Before Schwab, Chief Judge, and Lee, Richardson and Joseph, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

This is a worker's compensation occupational disease claim. The dispositive issue is whether the claim is compensable. The referee and Workers' Compensation Board ruled that it was not. The circuit court ruled that it was. We agree with the referee and Board, and therefore reverse the circuit court.

There is little dispute about the facts. Claimant began working as a crane operator in 1952. He injured his low back in a nonindustrial accident in 1968. He continued in the same employment, but had recurrent episodes of low back and leg pain. Claimant quit working in 1975. Several doctors made a variety of diagnoses—all generally indicating degenerative changes in the bone structure of the lumbosacral area of claimant's spine, which caused nerve root irritation, which caused the pain claimant experienced. Subsequent surgery provided partial relief.

Most of the doctors expressed opinions that the probable cause of claimant's low back disability was not his employment but, instead, the 1968 nonindustrial injury, aging and obesity. Claimant's argument for employment-causation rests entirely on the testimony of his surgeon. The surgeon testified that claimant's work "had a very high likelihood of irritating or aggravating his underlying disease." On cross-examination, the surgeon was asked to explain the basis of his opinion:

"Q * * * [C]an you, to a medical probability, state that the activities the Claimant engaged in at work did accelerate or hasten the degeneration of this condition, as opposed to any other normal daily activity, in daily living, just in the way a person lives?

"A I think I would be more specific and say that it made his symptoms worse, but I don't think there is any scientific irrevocable evidence that it causes it in a sense * * *.

"Q Then, you could not, in all medical probability, state that the work caused the neurological deficit?

[ 357 ]

"A He had been at work, and he developed pain, and he developed the neurological deficit; and they seemed to be temporally related, and that is all I can say.

"Q Related in time?

"A Yes.

"Q You have no medical connection that you can draw, other than the chronological history that he gave you, is that correct?

"A There is a good likelihood that the work aggravated his symptomatology and his pain and his difficulties * * *."

In denying compensation, the referee and Board expressed the

"* * * belief that the [claimant's] underlying problem would have progressed to the present state in any event and that it would be impossible to do more than speculate as to whether claimant's activities at work had anything more to do with his disease [than] his ordinary daily activities. * * *"

In granting compensation, the circuit court placed a different emphasis on the same facts:

"[The surgeon] testified there was no scientific irrevocable evidence that claimant's employment aggravated his spondylosis. But, [the surgeon] did say there was a good likelihood claimant's work aggravated his symptomatology, that being in pain and immobility resulting from a neurological deficit. * * *"

We agree with all prior factfinders—claimant's work did not cause or aggravate his underlying disease, but claimant's work did cause pain, i.e., a symptom of his disease.

The legal question is whether these facts are sufficient to establish compensability. We hold they are not.

■ We have frequently considered recurring back problems presented as either new injuries, aggravations of old injuries or, as in this case, occupational disease claims. While aggravation claims can present unique problems, new injury claims and occupational disease claims invoke the same standard:

"A 'compensable injury' is an accidental injury * * * arising out of and in the course of employment * * *." ORS 656.005(8)(a).

"As used in ORS 656.802 to 656.824, 'occupational disease' means:

"(a)  Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." ORS 656.802(1)(a).

The "arising out of" standard requires a causal connection between a claimant's work activities and his claimed injury or disease. The inquiry, in broad terms, is the etiology of the present condition.

■  The injury or disease need not, however, be the sole cause of the present condition. It is sufficient if the injury or disease is a material contributing cause of the disability, as, for example, when an injury or disease causes a significant worsening of an underlying condition.

■  As applied to a case like this one, these rules require distinguishing between claimant's *disease*—changes in the structure of the lumbosacral spine—and his *symptoms*—pain in the buttocks and legs. To have a compensable occupational disease, claimant must establish that his work as a crane operator originally caused or materially and permanently worsened his spine condition. It is not sufficient merely to establish that claimant's work as crane operator required him to make certain motions which caused his underlying condition to be symptomatic, i.e., caused pain. Otherwise, any person with common idiopathic conditions such as rheumatism, arthritis or bursitis whose job required painful movements would have a compensable occupational disease. "Arises out of" in ORS 656.802(1)(a) requires that the disease be caused or materially worsened by employment activity; merely showing that employment produces symptoms of nonindustrial disease (or one of unknown causation) is insufficient.

[ 359 ]

Judged by this standard, claimant's condition is not compensable.

Our analysis here in turn requires analysis of *Hamilton v. SAIF*, 11 Or App 344, 501 P2d 1007 (1972), *rev den* (1973). That case arose under a statute, since repealed, that required that workers' compensation claims be supported by a written opinion of a physician. We were there concerned with the adequacy of the physician's written opinion. It stated that the claimant had "sustained an aggravation of her symptoms." 11 Or App at 350. In holding that a written opinion of a physician satisfied the then-existing procedural requirement, we did not intend to hold that such a factual finding would, substantively, be compensable.

■ We now hold that a worsening (purposely avoiding the term of art "aggravation") of symptoms is not compensable. Only the onset or significant worsening of injury or disease arising out of, i.e., caused by, employment can be compensable. A worsening of symptoms is only significant to the extent that it supports an inference that employment caused a worsening of the underlying injury or disease. We agree with the Board that such an inference would be totally speculative in this case.

Reversed.