Argued January 15, resubmitted in banc April 16,
reversed April 23, 1979

HENRY, *Respondent,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Petitioner,*
(No. 77-5377, CA 12110)
593 P2d 1251

Earl M. Preston, Associate Counsel, State Accident Insurance Fund, Eugene, argued the cause for petitioner. With him on the brief were K. R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Eugene.

Thomas A. Huntsberger, Springfield, argued the cause for respondent. With him on the brief were John C. DeWenter and DeWenter & Ackerman, Springfield.

Before Schwab, Chief Judge, and Thornton, Lee and Gillette, Judges.

GILLETTE, J.

**GILLETTE, J.**

State Accident Insurance Fund (SAIF) seeks reversal of the Workers' Compensation Board (Board) determination that claimant's foot condition is compensable. Both SAIF and the referee had denied compensation. SAIF contends that claimant did not adequately establish that his condition was work-related. We agree and reverse.

The essential facts are as follows: When claimant was about 14, he began working as a farm laborer, which involved working twelve hours a day (on his feet all but half an hour), seven days a week, eight or nine months a year. He moved to Oregon in 1972 and began working in a mill. For the first year, he worked on the green chain and cleanup. On the green chain, he pulled light veneer off a belt. Cleanup, in contrast, involved tilting large, heavy boxes to empty them, and lifting shovelfuls of material weighing 10 to 20 pounds. On cleanup, claimant was constantly on his feet on a concrete floor. About eight months after he began work at the mill, he developed problems with his hands.

After a year, claimant became a head spotter, a job which required almost constant standing on a wooden catwalk and much lifting. After a few months as head spotter, claimant noticed a burning sensation on the heels and balls of his feet when he stood, walked, and lifted, which would start halfway through the shift and continue for about an hour after he got home from work. He did not miss any work, and did not see a doctor about the condition because he did not consider it to be serious.

After a year as head spotter, claimant became charger operator, which involved even more time on his feet. The job involved more lifting than head spotter, and was at a faster pace. Claimant's condition worsened. He would have no pain when he woke up, but by halfway through his shift he would have pain, swelling and discoloration of the top of his feet, which

would last for several hours after he got off work. He still did not seek medical assistance, but began taking 10 to 15 aspirins per day.

After he had been on the charger for five or six months in a row, claimant's condition further worsened. He felt a throbbing pain and burning in his ankles, legs and the backs of his knees as well as in his feet. The discoloration continued and he noticed swelling around his ankles. The pain would begin each night after he worked about two hours into the shift, and would continue until two or three hours after he finished work. He continued to take aspirins and started to soak his feet in hot water, but that did not seem to help.

Several months after his condition worsened, claimant sought medical assistance. He was referred to a podiatrist, who performed operations and prescribed drugs and arch supports, none of which helped. On the podiatrist's advice, claimant quit his job. The swelling and pain subsided shortly thereafter, and three to four months later the discoloration had disappeared. Both during and after his tenure in the mill, claimant found relief from his foot problems when he stayed off his feet.

Although claimant had no foot problems when he was on his feet on soft ground as a farm laborer, he does not think he could return to agricultural work because of the pain he experiences whenever he is on his feet for extended periods.

Claimant's treating doctor, the podiatrist, could not determine the exact etiology of claimant's problem, but noted that prolonged standing aggravated the condition. He thought claimant's condition was likely to worsen, and recommended that claimant not take a job requiring standing. During the course of treatment, the podiatrist referred claimant to two other doctors. One, an orthopedic surgeon, thought claimant had bilateral metatarsalgia and prescribed arch supports. He suggested that claimant attempt to return to

work. The other, a rheumatologist, found no evidence of inflammatory arthritis and prescribed medication, which had no beneficial effect. He did not mention whether he thought claimant's condition was caused or aggravated by the conditions under which he worked.

A fourth doctor, who did not personally examine claimant, concluded after reviewing letters from the podiatrist, orthopedic surgeon, and rheumatologist that "the complaints voiced by this patient are not a product of his occupation."

The referee denied compensation because standing is a normal function, and because he felt that the fact that standing aggravated claimant's condition did not mean that claimant's occupation aggravated the condition. The referee thought that the fact that claimant could no longer work at jobs requiring him to be on his feet all day should not require imposition of responsibility on the employer where the condition apparently predated the employment. In reversing, the Board noted that usually additional weight is given to the opinion of the treating physician, which it thought the referee had ignored, and concluded that claimant's work aggravated a preexisting condition, so that claimant was entitled to compensation.

Upon *de novo* review, we hold that claimant has not carried his burden of showing that his condition—diagnosed as generalized metatarsalgia of both feet, etiology unknown—is presently more severe than it would have been had claimant never worked at all.

Claimant's theory is that he has a compensable occupational disease under ORS 656.802(1)(a), which defines an "occupational disease" as:

> "Any disease or infection *which arises out of an in the scope of the employment,* and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." (Emphasis added.)

Of the four examining and consulting physicians involved in this case, only one—Dr. Hogan, claimant's

treating podiatrist—offered an opinion which in any way could even arguably be said to supply the element of causation required by ORS 656.802(a). Dr. Hogan wrote,

"* * * *

"In summary, I would say that *although it is impossible to [pinpoint] the etiology of Mr. Henry's symptoms they are definitly aggravated by prolonged standing* * * * * It is my opinion that Mr. Henry's condition *is not medically stable and that it is probably going to worsen*." (Emphasis added.)

The best that may be said of this evidence for claimant is that he has sore feet which become much more sore when he stands on them for long periods. No witness, medical or otherwise, indicated that the soreness would not have occurred but for claimant's work. No witness, medical or otherwise, indicated that the progression of the soreness to its present or future levels would have been any different had claimant not been employed at all. No witness, medical or otherwise, testified that claimant's present level of disability would not have occurred at all, or so quickly, but for his employment.

In other words,

"* * * [C]laimant's work did not cause or aggravate his underlying disease, but claimant's work did cause pain, *i.e.,* a symptom of his disease.

"The legal question is whether these facts are sufficient to establish compensability.

"* * * * *

"* * * [To hold such facts to be sufficient would mean that] any person with common idiopathic symptoms such as rheumatism, arthritis, or bursitis whose job required painful movements would have a compensable occupational disease. 'Arises out of' in ORS 656.802(1)(a) requires that the disease be caused or materially worsened by employment activity; merely showing that employment produces symptoms of a nonindustrial disease (or one of unknown causation) is insufficient." *Weller v. Union Carbide Company,*

35 Or App 355. 358-359. 582 P2d 8 (1978). (Emphasis added.)

Reversed.

**THORNTON,** dissenting.

Contrary to the majority, from my review of this record I find that claimant has carried his burden of establishing that he has a disabling foot condition, albeit of unknown cause, which was made progressively worse by his employment. This conclusion was supported by claimant's treating doctor.

Before claimant's symptoms became apparent initially, he was able to work long hours on his feet without pain, swelling and discoloration. Now those symptoms recur rapidly whenever he is on his feet very much, and his doctor has suggested that he avoid jobs which require continual standing and walking, for, the doctor opined, claimant's condition is not medically stationary and will probably worsen if he takes a job requiring prolonged standing. Furthermore, while standing and walking are generally to be encountered in everyday life, one is not always subject, as was this claimant in his employment, to day-long standing and walking on wood, concrete and hard-packed earth.

True, the medical experts were divided in this case. I cannot, however, bring myself to deny this workman benefits because of this.

I agree with the Workers' Compensation Board that claimant is entitled to compensation.